**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE, A MINOR, BY HER LEGAL GUARDIANS E.F. AND N. F., | CIVIL ACTION |
| *PLAINTIFF,* | NO.   2:26-CV-02525 |
| *V.* | |
| SCHOOL DISTRICT OF SPRINGFIELD TOWNSHIP, | JURY TRIAL DEMANDED |
| SPRINGFIELD TOWNSHIP MIDDLE SCHOOL, | |
| AND | |
| GERALD JAMES LEISTRUM, | |
| *DEFENDANTS.* | |

**COMPLAINT**

Plaintiff Jane Doe ("Plaintiff"), a minor, by her legal guardians E. F. and N. F. and through her undersigned counsel, files this Complaint against Defendants School District of Springfield Township (the "Springfield School District"), Springfield Township Middle School (the "Springfield Middle School"), and Gerald James Leistrum.  In support of her Complaint, Plaintiff avers the following:

## I.   INTRODUCTION

1.   Plaintiff was a middle school student at Springfield Middle School when a school nurse, Gerald James Leistrum ("Defendant Leistrum") sexually harassed and groped her during a physical examination he had no legal authority to conduct.  This outrageous conduct—which Defendants initially attempted to sweep under the rug— left a young female victim scared, nervous, and violated, leading her to seek treatment and change schools.

2.   Specifically, Plaintiff experienced chest pain and went to the nurse's office. Defendant Leistrum moved Plaintiff from the main (and visible) room in the office and placed her in a small, unmonitored side room.  With Plaintiff effectively trapped by the much larger male nurse, Defendant Leistrum touched his young victim repeatedly, placing his hands all over her upper body, including her left breast, under the guise of conducting an "exam." Afterwards, Defendant Leistrum attempted to conceal his blatant misconduct by lying to Plaintiff's parents, manipulating her medical records and concocting various stories to avoid accountability for his gross misconduct.

3.   The Springfield School District and the Springfield Middle School (together the "School District Defendants") failed to protect Plaintiff, including because the school either lacked appropriate policies and procedures or had certain reckless and potentially unlawful policies in place that paved the way for Defendant Leistrum's misconduct.

4.      The School District Defendants then rushed to conduct an initial, sham investigation, including by soliciting a statement from Plaintiff (who was traumatized) without her parents present, even though Plaintiff's parents demanded to be there. The School District Defendants owed numerous duties to Plaintiff, a vulnerable female student, but they elected to ignore these duties repeatedly throughout the events and occurrences giving rise to this case.

5.      Plaintiff brings this action seeking justice, damages, and policy changes associated with the significant harm she suffered. Plaintiff continues to suffer mental anguish and harm, while her abuser—for at least a period of time—remained employed within the Springfield School District.  But for the School District Defendants' conduct, Defendant Leistrum would have never had the opportunity to exploit Plaintiff.  No student should be subjected to what Plaintiff had to endure.

## II.      JURISDICTION AND VENUE

6.      The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

7.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the state law claims herein are so related to Plaintiff's federal claims that they form part of the same case or controversy.

8.      Venue is proper in the judicial district pursuant to 28 U.S.C. § 1391(b)(1) and(b)(2), because all the events at issue took place within its jurisdictional limits.

### III.   PARTIES

9.   Plaintiff Jane Doe is a minor, who resides with her parents in Pennsylvania.

10.   Plaintiff's parents (E.F. and N.F.) are citizens and Pennsylvania residents. Plaintiff's parents are her legal guardians.

11.   Defendant Leistrum is an adult individual, residing at 1355 Old York Road, APT 1, Abington, Pennsylvania 19001.

12.   Defendant Springfield School District is a local government agency existing under, and by virtue of, the laws of the Commonwealth of Pennsylvania, with a place of business at 1901 E. Paper Mill Road, Oreland, Pennsylvania 19075.

13.   Defendant Springfield School District promulgates policies, rules, and other directives regarding the operations of schools within the school district, including Defendant Springfield Middle School.

14.   Defendant Springfield Middle School is a public middle school existing under, and by virtue of, the laws of the Commonwealth of Pennsylvania, with a place of business located at 1901 E. Paper Mill Road, Oreland, Pennsylvania 19075.

## IV.  FACTS

### A.  THE SPRINGFIELD MIDDLE SCHOOL'S NURSING OFFICE

15.  Defendant Springfield School District provides educational and extracurricular services to children residing within the district boundaries.

16.  During the 2024-2025 school year, Defendant Leistrum was a school nurse at Defendant Springfield Middle School, tasked with supporting the Certified School Nurse, Zakieh Moussa.

17.  Under Pennsylvania law, Defendant Leistrum was required to obtain the following background checks and/or obtain the appropriate clearances from:

   a.  The Department of Child Human Services Child Abuse History Clearance;

   b.  Pennsylvania State Police Request for Criminal Records Check; and

   c.  Federal Criminal History Information.

18.  Under Pennsylvania law, Defendant Leistrum was prohibited from working with children in Pennsylvania without these clearances, and Pennsylvania law requires that all clearances remain valid.

19.  At the time of the misconduct described herein, at least certain of Defendant Leistrum's clearances permitting him to work with children had expired.

20.  Nevertheless, Defendant Leistrum continued to work as a Staff Nurse for the Springfield School District Defendants.

21.  The Springfield School District Defendants knew, or should have known, that at least certain of Defendant Leistrum's clearances had expired.

22.     The outdated clearances were far from the only problem associated with Defendant Leistrum. Defendants Springfield School District and Springfield Middle School were, or should have been, aware that Defendant Leistrum had a history of inappropriate behavior and contact aimed at young, female students.

23.     Prior to his assuming his position as a school nurse, Defendant Leistrum coached a girls' sports team at a different school. Defendant Leistrum engaged in inappropriate touching of the girls on the team, under the guise of "moving" his players. Eventually, some of the girls stepped forward to report the behavior to their parents, and he was disciplined.

24.     Defendants Springfield School District and Springfield Middle School knew, or should have known, that Defendant Leistrum had been reprimanded for this past inappropriate behavior.  There is no bigger red flag for an adult male working with young female students.  Despite these allegations, he was hired as a school nurse for the Springfield Middle School, where he was given access to the female student population in sensitive settings.

25.     Defendant Leistrum garnered a reputation among the female students at Springfield Middle School, as female students felt uncomfortable around him.

**B.     PLAINTIFF WAS GROPED UNDER THE GUISE OF AN UNLAWFUL "EXAM"**

26.     On February 4, 2025, Plaintiff began to experience chest pain during gym class.

27.     Plaintiff initially avoided going to see a nurse, out of a concern that she would encounter Defendant Leistrum.

6

28.     Plaintiff's chest pain became worrisome in her mind, and, at approximately 12:15 PM, Plaintiff asked to visit the Nurse's office.

29.     When she got to the office a few minutes later, Plaintiff was greeted by Defendant Leistrum.

30.     Plaintiff's assessment began in the main room of the Nurse's office, near the main entry point, where both were visible to other students and staff in the vicinity.

31.     Defendant Leistrum instructed Plaintiff to describe her chest pain.  She replied that her pain was concentrated in the middle of her chest. Plaintiff further explained that she had experienced heartburn the night prior (for which she received medication), and she conveyed that she was taking an antibiotic for MRSA.

32.     Defendant Leistrum then instructed Plaintiff to follow him into a small, sequestered side room separate from the main room in the Nurse's office. This room has only one door for entry and exit, and the two were not easily visible to others after entering.

33.     Throughout the rest of the examination, Defendant Leistrum effectively prevented, or made it difficult, for Plaintiff to leave the room, including by positioning himself with his back to the door at points of the encounter and by having his hands on Plaintiff at other times.

34.     Defendant Leistrum commenced—without consent or authority—a physical examination of Plaintiff, an endeavor that was far beyond the scope of responsibilities for a public-school nurse.

35.     Using both hands, Defendant Leistrum gripped and squeezed Plaintiff's upper body (on the sides), moving from her armpits down to her waist.

36.     During his "examination," Defendant Leistrum asked Plaintiff several times if she was experiencing any pain.  She replied "no" each time.

37.     Defendant Leistrum then moved in front of Plaintiff, while continuing to position himself in front of the door, such that he was facing Plaintiff with his back to the door.

38.     After he was done gripping her upper body, Defendant Leistrum instructed Plaintiff to raise her left arm. He began to feel her ribs, including those located under Plaintiff's breasts.

39.     Defendant Leistrum then palpitated various areas on the top of her chest and continued to ask Plaintiff if she was experiencing any pain from the poking. Again, Plaintiff replied "no."

40.     Defendant Leistrum instructed Plaintiff to lift her left breast and use two fingers on her right hand to feel in between the bones under her left breast, even though Plaintiff had already told him multiple times that her pain was focused in the center of her chest.

41.     Defendant Leistrum did not explain the purpose of this breast examination, nor did he instruct Plaintiff on what findings (if any even existed) she should be looking for.

42.     Defendant Leistrum watched intently as Plaintiff followed his instructions.

43.     Defendant Leistrum told Plaintiff that she was "doing it wrong," and, without warning, authority, or permission to touch her body, he placed the entirety of his hand under Plaintiff's breast, making a cupping motion.

44.     Plaintiff immediately, and understandably, became frightened and extremely concerned with what was happening to her body.  Plaintiff, who was diminutive in stature compared to Defendant Leistrum, froze and was unable to remove his hand from her breast.

45.     Defendant Leistrum finally stopped touching Plaintiff and told her that "maybe I should just listen to your heart."

46.     Defendant Leistrum listened to Plaintiff's heart through his stethoscope.

47.     After he was finished, Defendant Leistrum allowed Plaintiff to leave the room at approximately 12:32 PM.

48.     Upon leaving the room, Plaintiff was visibly distressed.

49.     At no point during the examination, or afterwards, did Defendant Leistrum explain the purpose of the purported "exam" to Plaintiff, nor did he obtain consent.

50.     Defendant Leistrum conducted the entirety of this "exam" only when he and Plaintiff were isolated in the side room, outside the view of others in, or around, the nurse's office.

C.     **DEFENDANT LEISTRUM ATTEMPTS TO CONCEAL HIS MISCONDUCT**

51.     Defendant Leistrum immediately recognized that the "exam" left Plaintiff very anxious, concerned, and unsettled.  When the two returned to the main room in

9

the Nurse's office, where they were visible to others, Defendant Leistrum remarked that Plaintiff "looked even more nervous than when she first came in."

52. Defendant Leistrum called Plaintiff's mother and identified himself as a school nurse.

53. Defendant Leistrum told Plaintiff's mother that Plaintiff reported to the Nurse's office with chest pain. Defendant Leistrum reported that Plaintiff's complaints were minor and did not require early departure from school. Defendant Leistrum did not describe the issue as urgent, advising Plaintiff's mother to take her to the pediatrician only if her pain did not subside.

54. Defendant Leistrum concealed all aspects of the physical exam he performed on Plaintiff in the side room.

55. In fact, he did more than just omit critical information from Plaintiff's mother, as Defendant Leistrum attempted to portray himself as someone who was mindful of a young female student's physical boundaries. Defendant Leistrum represented that he did not perform an examination because it "wasn't his place," and he "doesn't get into that," making obvious reference to the possible exploitation that could occur (and did in this case) if he conducted a physical examination of Plaintiff.

56. Dr. Amy Mangano, the school's Principal, was passing through the Nurse's Office, and witnessed a portion of Defendant Leistrum's phone call with Plaintiff's mom.

57. Sometime after Plaintiff left the Nurse's Office, Defendant Leistrum prepared a falsified medical report of Plaintiff's visit.

10

58. In the falsified report, Defendant Leistrum failed to make any reference to the physical exam he forced upon Plaintiff.

### D.   PLAINTIFF REPORTS THE MISCONDUCT

59. Plaintiff returned to her classroom in a state of distress, which her friends in class noticed right away.

60. Plaintiff told her friends about the "exam" she had just endured.

61. A teacher's aide overheard the story and asked what happened. When the aide confirmed that Plaintiff had been inappropriately touched and that it happened at the school, the aide brought Plaintiff to a guidance counselor to make a report.

62. Plaintiff was bounced between guidance counselors, none of whom had immediate availability, before eventually being led to Mrs. Kieran Brady, the Assistant Principal.

63. Plaintiff recounted her interaction with Defendant Leistrum to Mrs. Brady.

64. Afterwards, Plaintiff was instructed to recount the physical assault to Dr. Mangano (the school's Principal).

65. Dr. Mangano confirmed that she overheard Defendant Leistrum during his conversation with Plaintiff's mom, including the portion of the call where Defendant Leistrum falsely stated that no examination occurred.

66. Both Dr. Mangano and Mrs. Brady instructed Plaintiff to prepare a written statement (without yet informing Plaintiff's parents of what occurred) detailing the events.

67.     Minutes after Dr. Mangano and Ms. Brady directed Plaintiff to start her report, Plaintiff needed to catch the bus, as the school day had ended.

68.     Dr. Mangano and Mrs. Brady instructed Plaintiff to depart, even though she had not yet finished her statement.

69.     Dr. Mangano and Mrs. Brady called Plaintiff's mother thereafter (at approximately 3 PM) to inform her that Defendants were beginning an investigation.

70.     While this was occurring, Defendant Leistrum took additional, covert steps to conceal his misconduct.

71.     Specifically, Defendant Leistrum amended his initial medical report to reflect the following: "I would like to amend my locked visit report to say that I illustrated what I wanted her to do in the 4th and 7th intercoastal spaces by pressing into L 1st and 2nd spaces. I also asked her to lift her left breast with her right hand and try to palpitate inter-spaces that might be associated with ICS 6 & 7. She wasn't good @ it. I was not satisfied, but refused to do the palpitation myself stating that it was too sensitive an area and should be done by a medical. I actually threw up my hands and said, 'I'm just not doing it.'"  This amendment was knowingly false and misleading.

E.     **THE SCHOOL DISTRICT DISREGARDS THE SERIOUS CONCERNS RAISED BY PLAINTIFF'S PARENTS**

72.     At 7:44 AM on February 5, 2025, Plaintiff's parents emailed Dr. Mangano and stated that they would be present when Plaintiff finished her written statement and for any additional questioning from the Springfield School District Defendants.

73. Plaintiff returned to school that same morning, but without waiting for Plaintiff's parents to arrive, Plaintiff was withdrawn from class and taken to the Springfield Middle School's administrative office.

74. When Plaintiff arrived there, Dr. Mangano and Mrs. Brady asked her to review and sign her statement. Mrs. Brady stated, "You can add on to your statement, but I think it is pretty much done." This is a ridiculous statement for an administrator to make to a child, particularly given the trauma associated with the "exam" and Plaintiff's parents' demand to be present. This was a situation that required a deliberate and professional oversight, not an attempt by a school administrator to hurry Plaintiff along. Defendants were acting with deliberate indifference to what had occurred.

75. Unfortunately, Defendants proceeded with this hurried and indifferent approach, as Dr. Mangano told Plaintiff to go into a conference room to continue work on her statement. Plaintiff did as she was told, added a few sentences, and then took the statement to Dr. Mangano who asked her to sign it. The school only informed Plaintiff's parents that they ignored the parents' directions after Plaintiff signed her statement.

76. Plaintiff's parents were justifiably outraged that their daughter—a minor who had just been physically violated by the school nurse—was forced to complete her report without the presence of her parents, in direct violation of their wishes.

77.    Later on February 5, 2025, Plaintiff's parents joined a conference call with Dr. Mangano, Mrs. Brady and Mrs. Moussa (the head nurse), to address the Springfield School District's purported investigation.

78.    Defendants failed to provide any plausible explanation for the assault, the rushed investigation, or potential disciplinary measures against Defendant Leistrum. Dr. Mangano, Mrs. Brady and Mrs. Moussa could not explain why Defendant Leistrum would conduct such an examination, given that school nurses do not diagnose, or prescribe medications to treat, medical conditions.

79.    Dr. Mangano confirmed to Plaintiff's parents that she witnessed Defendant Leistrum lie to Plaintiff's mother regarding whether a medical examination occurred.

80.    During the conference, Mrs. Moussa admitted that there were no policies or procedures in place to protect students from medical abuse at Springfield Middle School like that which occurred to Plaintiff.

81.    Mrs. Moussa was asked to describe what policies or procedures would be implemented for a female student complaining of chest pain. Mrs. Moussa could not provide any guidance; however, she did admit that she would not touch a student without their express permission.  Stated differently, the head nurse (a female) recognized that it would not be appropriate to touch the breast of a student during a purported "exam," yet the School District Defendants had no policy or procedure in place to halt a male nurse from doing so.

14

82. Dr. Mangano, Mrs. Brady, and Mrs. Moussa were again informed that Plaintiff never consented to the examination.

83. Dr. Mangano informed Plaintiff's parents that Defendant Leistrum was inexplicably still an employee of Defendant Springfield Township.

84. In the evening of February 5, 2025, Dr. Mangano left a voicemail with Plaintiff's family. In it, she emphasized that "all of our bases in terms of protocol" were covered, and that, moving forward, "they can certainly be sure that [Plaintiff] sees the other nurse." In other words, Dr. Mangano told Plaintiff's parents to send their child back into the same school with the same abusive nurse, despite the fact that the nurse would continue to work there, and no new policies to protect students were in process. Dr. Mangano essentially told the mother of the assault victim to "trust" that it would not happen again, even though no real changes to assure student safety were on the table.

85. Defendant Leistrum inexplicably continued to work in the same building for a period of time, before being moved to the high school, where Defendants would allow him to serve as a nurse for more mature high school girls.

86. This caused extreme mental anguish to Plaintiff, including panic attacks. Plaintiff requires counseling because of the incident.

87. Defendant Leistrum assaulted Plaintiff under the guise of performing a medical examination. Nothing about the examination was standard, or appropriate, based on Plaintiff's symptoms and the fact that Defendant Leistrum was a school nurse who should never have been tasked with conducting such an "exam."

15

88.    There was no medical justification for sequestering Plaintiff alone in a room with an adult male.

89.    There was no medical justification for Defendant Leistrum to grope, fondle, or touch Plaintiff's breast based on her complaints of chest pain.

90.    At all material times giving rise to this Complaint, Defendant Springfield Middle School operated within the geographic parameters of, and under the control of, Defendant Springfield School District.

91.    At all material times giving rise to this Complaint, Defendant Springfield Middle School operated under, and according to, policies, rules, and directives promulgated by Defendant Springfield School District.

92.    At all material times, Defendant Springfield School District acted individually and by and through its employees, agents and/or servants, including but not limited to teachers, teaching assistants, coaches, instructors, nurses, counselors, and security personnel, all acting within the course and scope of their employment.

93.    At all material times, Defendant Springfield Township acted individually and by and through its employees, agents and/or servants, all acting within the course and scope of their employment.

94.    At all material times, the employees and volunteers working for Defendant Springfield Township supervised and instructed children in Defendants' facilities.

95.    At all material times, Defendant Springfield Middle School employees and volunteers, including Defendant Leistrum, were the actual or apparent agents,

servants, and/or employees of Defendant Springfield Middle School, acting within the course and scope of their employment, master-servant, and/or principal agent relationship with Defendant Springfield Middle School.

96. At all material times, Defendant Springfield Middle School was acting by and through its actual or apparent agents, servants, and/or employees, including Defendant Leistrum, to provide educational, paraprofessional, learning support, care, medical services and safety services to Plaintiff.

97. Accordingly, Defendants Springfield School District and Springfield Middle School are liable for the acts and/or omissions of its agents, servants and/or employees, including Defendant Leistrum, that occurred in the course of providing educational, paraprofessional, learning support, care, medical services, and safety services to Plaintiff under theories of agency, master-servant, *respondeat superior*, and/or right of control.

98. At all material times, the employees and volunteers who were the actual or apparent agents, servants, and/or employees, including Defendant Leistrum, of Defendant Springfield School District or Springfield Middle School were acting under the policies, rules, and directives created, instigated, implemented, and promulgated by Defendant Springfield Township.

99. At all material times, Defendant Springfield School District promulgated policies, rules, and directives to the agents, servants, and/or employees of Defendant Springfield Middle School, including Defendant Leistrum, governing the educational,

17

paraprofessional, learning support, care, medical services and safety services Defendant Springfield Middle School provided to Plaintiff.

100.   Accordingly, Defendant Springfield Township is liable for the acts and/or omissions of its agents, servants and/or employees, including Defendant Leistrum, that occurred in the course of providing educational, paraprofessional, learning support, care, medical services and safety services to Plaintiff under theories of agency, master-servant, *respondeat superior*, and/or right of control; as well as the agents, servants and/or employees of Defendant Springfield Middle School that occurred in the course of providing educational, paraprofessional, learning support, care, medical services and safety services to Plaintiff under theories of agency, master-servant, *respondeat superior*, and/or right of control.

101.   There may be other employees or agents of Defendants Springfield Middle School and Springfield Township with responsibilities for the education, care, safety, and well-being of Plaintiff whose actions and/or omissions contributed to the injuries and damages suffered by Plaintiff whose identities are not yet known. The identities of such persons will be discerned through discovery and such additional persons will be joined as defendants, if and when appropriate.

## COUNT I
Violation of 42 U.S.C. § 1983
*Plaintiff v. All Defendants*

102.  Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

103.  42 U.S.C. § 1983 provides a private right of action to a citizen against any person who, "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory," deprives the citizen of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

104.  Section 1983 therefore, provides a vehicle for a U.S. citizen to sue a state or municipal official for a violation of the citizen's federal Constitutional and statutory rights based on the official's actions in carrying out a state or municipal policy, practice or decision. *See Monell v. Dep. of Soc. Servs.*, 436 U.S. 658 (1978).

105.  The full range of common law remedies is available to a plaintiff asserting a claim under § 1983. Legal relief may take the form of nominal, compensatory or punitive damages. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986).

106.  Among the historic liberties protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution is the right of a citizen, such as Plaintiff, to be free from unjustified intrusions on personal security.

107.  At all times relevant to the allegations of this Complaint, Defendants were acting under the laws of the Commonwealth of Pennsylvania.

19

108. Defendants deprived Plaintiff of her right to be free from physical harm and bodily integrity and subjected her to sexual harassment and assault by Defendant Leistrum.

109. Defendants deprived Plaintiff of her right to public education, her right to be free from physical assaults by school personnel, her right to be free of the invasion of her right to personal security and bodily integrity, and of her procedural and substantive due process rights secured by the Fourteenth Amendment.

110. Additionally, Defendants Springfield School District and Springfield Middle School knew or should have known that Defendant Leistrum's history of inappropriate touching of young girls exposed Plaintiff to experiencing sexual harm from Defendant Leistrum.

111. Defendants Springfield School District and Springfield Middle School willfully disregarded Plaintiff's safety by exposing her to medical care performed by an unauthorized individual with a history of inappropriate sexual touching.

112. Defendants Springfield School District and Springfield Township Middle School through official policy decisions, including policies permitting a male nurse to examine a minor female alone in a secluded room led to the damages caused in this case.

113. Defendants Springfield School District and Springfield Middle School knew or should have known that assault, including of a sexual nature, could occur by a provider.

20

114. Defendants Springfield School District and Springfield Middle School further subjected Plaintiff to a hostile educational environment when, after the assault, they made the official decision to allow Defendant Leistrum to continue working in the school and told Plaintiff to come back to school, placing her in danger of a repeat assault and causing additional harm to Plaintiff including a panic attack.

115. The foregoing violations of Plaintiff's rights have been to her educational and emotional detriment, causing her fear, pain, and mental anguish.

116. The actions and inactions set forth above, all of which occurred under color of state law, were the factual and proximate causes of Plaintiff's injuries and damages.

**WHEREFORE**, Plaintiff, demands judgment in her favor and against all Defendants and demands compensatory, consequential, and punitive damages as indicated above, and the award of attorneys' fees and costs as permitted under 42 U.S.C. § 1988, and all other relief the Court deems applicable.

### COUNT II
Sex Discrimination Under Title IX
*Plaintiff v. Springfield School District and Springfield Middle School*

117. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

118. Title IX prohibits sex discrimination in educational institutions. *See* 20 U.S.C. § 1681(a) ("No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.").

21

119. Sexual harassment is actionable under Title IX in the event of "sexual assault." 34 C.F.R. § 106.30(a).

120. Sexual assault is defined as a forcible or nonforcible sex offense under the uniform crime reporting system of the Federal Bureau of Investigation ("FBI"). 20 U.S.C. § 1092(f)(6)(A)(v). This is a sexual act directed against another person, without the consent of the victim, including instances where the victim is incapable of giving consent. 34 C.F.R. Pt. 668, Subpt. D, App'x A.

121. Plaintiff was sexually assaulted by Defendant Leistrum.

122. Plaintiff did not consent to or welcome the conduct, which was objectively offensive.

123. Defendants' conduct was severe and undermined Plaintiff's education, as she was forced to return to a school that still employed her abuser.  Plaintiff has since been forced to change schools and enroll at a private school.

124. Defendant Leistrum was her School Nurse, who presented himself as a competent medical professional to address her health concerns. He abused this trust by sexually assaulting her and disguising this assault as a routine medical examination.

**WHEREFORE**, Plaintiff, demands judgment in her favor and against all Defendants and demands compensatory, consequential, and punitive damages as indicated above, and the award of attorneys' fees and costs as permitted under 42 U.S.C. § 1988.

## COUNT III
Negligence
*Plaintiff v. Defendants Springfield Middle School & Springfield School District*

125.    Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

126.    Defendants owed a duty to Plaintiff to use reasonable care to protect the health, safety, and emotional well-being of Plaintiff while she attended school as mandated by Springfield School District.

127.    Defendants owed a duty to Plaintiff to use reasonable care to protect the health, safety, and emotional well-being of Plaintiff while she utilized the medical resources provided by Defendants.

128.    The breach of duty on the part of the Defendants Springfield Middle School and Springfield School District individually and by and through its employees, servants, and agents, including but not limited to teachers, teaching assistants, coaches, counselors, therapists, nurses, and security personnel consisted of the following:

a. Failing to appropriately screen, monitor, and maintain updated clearances for Defendant Leistrum;

b. Failing to maintain adequate supervision of Defendant Leistrum;

c. Failing to properly monitor the school nurse's office where Defendant Leistrum sexually assaulted Plaintiff;

d. Failing to properly monitor and/or supervise the actions of Defendant Leistrum for whom they bear supervisory responsibilities and whose actions or inactions contributed to

23

the harms suffered by Plaintiff;

e. Failing to implement appropriate policies, including for student examinations, performed by district personnel;

f. Failing to identify and act upon circumstances indicating a risk of harm and abuse to Plaintiff;

g. Failing to adhere to policies set forth by Defendant Springfield School District to prohibit discrimination based on sex and prohibit discriminatory harassment based on sex;

h. Failing to act on information provided by Plaintiff indicating harm and abuse to Plaintiff;

i. Failing to sufficiently investigate the conduct of Defendant Leistrum;

j. Failing to take action to remove Defendant Leistrum from Springfield Township Middle School in a timely manner;

k. Failing to discipline Defendant Leistrum in a timely manner;

l. Failing to prevent Defendant Leistrum from contact with minors in the Springfield School District after Plaintiff reported being sexually assaulted by Defendant Leistrum;

m. Failing to develop, adopt, adhere to and/or enforce policies and procedures regarding the medical examination of students enrolled at Springfield Township Middle School, or enrolled within the Springfield School District;

n. Failing to develop, adopt, adhere to and/or enforce policies and procedures that would have prevented the sexual and physical assault of Plaintiff;

o. Failing to supervise, manage, monitor and oversee employees, agents, and/or servants whose actions or inactions or compliance with policies and procedures would have prevented

24

the sexual and physical assault of Plaintiff;

p. Providing Defendant Leistrum, who sexually assaulted Plaintiff, with the opportunity to sexually assault Plaintiff;

q. Failing to prevent Plaintiff from suffering grievous and permanent emotional and psychological injuries;

r. Violating the principles of the Restatement (Second) of Torts § 323;

s. Failing to hire and train employees, agent, and/or servants to prevent, identify and act upon signs of harm to prevent sexual abuse;

t. Failing to keep Plaintiff safe from attacks by Defendants' employees, agents, and/or servants employed by Defendant.

129. Defendants Springfield Middle School and Springfield School District knew or reasonably should have known that breaching these duties would expose Plaintiff to the potential dangers of misconduct by Defendants' employee, Defendant Leistrum.

130. Defendant Springfield School District is a local agency for purposes of The Political Subdivision Tort Claims Act, 42 Pa. C.S. § 8501.

131. The above-referenced conduct of Defendants Springfield Middle School and Springfield School District demonstrates an outrageous and/or reckless disregard for the health, safety, and well-being of Plaintiff.

132. The above-referenced conduct of Defendants Springfield Middle School and Springfield School District was the direct and proximate cause of Plaintiff's injuries.

133. As a direct result of Defendants' negligence as set forth in this Complaint, Plaintiff suffered severe mental anguish, which she has and will endure for the rest of her life.

134. As a direct result of the Defendants' negligence, Plaintiff has in the past and will in the future suffer embarrassment, humiliation, shame, fear, anxiety, and depression.

135. As a further direct and proximate result of Defendants' negligence, Plaintiff has in the past and will in the future undergo medical and psychological treatment and incur medical costs and other costs.

136. As a direct result of Defendants' negligence, Minor-Plaintiff suffered an impairment of her earning capacity.

**WHEREFORE**, Plaintiff, demands judgment in her favor and against all Defendants and demands all remedies available under the law, as indicated above.

### COUNT IV
Assault & Battery
*Plaintiff v. Gerald Leistrum*

137. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

138. Defendant Leistrum committed an assault and battery upon Plaintiff.

139. Defendant Leistrum's actions were malicious, willful and wanton and were done with the specific intent to commit a forcible sexual assault against her.

140. Defendant Leistrum made unwanted physical and sexual contact with Plaintiff including sexually assaulting her.

26

141.   Defendant Leistrum acted intentionally, knowingly, or recklessly and with severe disregard for Plaintiff's well-being.

**WHEREFORE**, Plaintiff, demands judgment in her favor and against all Defendants and demands all damages available under the law, including compensatory and punitive damages, as indicated above.

## COUNT V
### False Imprisonment
*Plaintiff v. All Defendants*

142.   Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

143.   Defendant Leistrum intended to confine Plaintiff to the sequestered room in the Nurse's Office.

144.   Defendant Leistrum's actions confined Plaintiff to the sequestered room in the Nurse's Office.

145.   Plaintiff was conscious and afraid of her confinement and was harmed by it.

146.   The policies and procedures enacted and implemented by Defendants Springfield Middle School and Springfield School District render these Defendants vicariously liable for Defendant Leistrum's false imprisonment of Plaintiff, as Defendant Leistrum acted in the course of his employment as a Staff Nurse when he falsely imprisoned Plaintiff for a medical exam.

**WHEREFORE**, Plaintiff, demands judgment in her favor and against all Defendants and demands all damages available at law, as indicated above.

27

Respectfully submitted,

/s/ Lance Rogers
Lance Rogers, Esq.
Alexas Skucas, Esq.
Gregory S. Voshell, Esq.
Alexia R. Porche, Esq.
ROGERS COUNSEL
Attorney I.D. No. 87546/332544
26 East Athens Avenue
Ardmore, PA 19003
610-649-1880/877-649-1880 (fax)

Date: April 16, 2026